Edward W. McBride, Jr. (8236)
**EDWARD W. McBRIDE, JR., P.C.**
10 West 300 South, Suite 850
Salt Lake City, Utah 84101
Telephone: (801) 531-1030

*Attorney for Sophia Stewart*

FILED
U.S. DISTRICT COURT

2007 JUL 30 ⊃ 3: 54

DISTRICT OF UTAH

BY:_____
    DEPUTY CLERK

## IN THE UNITED STATES FEDERAL DISTRICT COURT

## CENTRAL DISTRICT, STATE OF UTAH

| | |
|---|---|
| SOPHIA STEWART, <br><br> Plaintiff, <br><br> v. <br><br> MICHAEL T. STOLLER, JONATHAN LUBELL, GARY BROWN and JOHN DOES I through X, individuals whose identities are not yet known, <br><br> Defendants. | **COMPLAINT** <br><br> Case: 2:07cv00552 <br> Assigned To : Kimball, Dale A. <br> Assign. Date : 7/30/2007 <br> Description: Stewart v. Stoller et al <br><br><br> Judge: _____ |

COMES NOW Plaintiff, Sophia Stewart, by and through her counsel of record, Edward W. McBride, Jr., and hereby complains against Michael T. Stoller, Jonathan Lubell, Gary Brown and John Does I through X and Jane Does I through X, alleging as follows:

## PARTIES AND JURISDICTION

1.      Plaintiff Sophia Stewart (hereinafter "Stewart") is an individual residing in Salt Lake City, Utah.

2.     Michael Stoller is an attorney licensed to practice law in the State of California with his offices located at 9454 Wilshire Boulevard, Suite 500, Beverly Hills, California 90212.

3.     Jonathan Lubell is an attorney licensed to practice law in the State of New York with his offices located at 730 Fifth Avenue, 9th Floor, New York, New York 10019.

4.     Gary Brown is an attorney duly licensed to practice law in the State of California with his offices located at One Fair Oaks Avenue, Suite 301, Pasadena, California 91105.

5.     The John Doe defendants are individuals and corporations that assisted the Defendants named herein in accomplishing the various breaches, acts and omissions spawning this Complaint whose identities Plaintiff does not yet know.

6.     Venue before this Court is proper pursuant to 42 U.S.C. Section 1394(2) and (3).

7.     Jurisdiction is proper before this court under 42 U.S.C. Section 1332.

8.     This Court has personal jurisdiction over the defendants to this matter because the contract at issue was entered into in Utah, a substantial part of the events or omissions took place in Utah.

9.     This Court also has jurisdiction over the defendants to this matter under Utah's long arm statute, UCA, section 78-27-23(2).

10.     This Complaint contains claims for breach of contract, malpractice, civil conspiracy, fraud, breach of fiduciary duty and conversion.

11.    In this matter, Stewart alleges that Andy Wachowski, Larry Wachowski, Thea Bloom, Twentieth Century Fox Film Corporation, Warner Bros. Entertainment, Inc., James Cameron, Gale Ann Hurd and Joel Silver appropriated and infringed on her copyrighted material in creating the Matrix and Terminator Trilogies.

12.    Stewart also alleges in this matter that a lawsuit that her attorneys, defendants Michael Stoller, Jonathan Lubell, Gary Brown and Dean Webb, filed in California federal court to protect her copyrighted material was dismissed because of those attorney' errors.

13.    Stewart also alleges in this matter that she was ordered to pay the defendants' attorneys' fees and assessed punitive damages because of her attorney's errors and omissions.

## GENERAL ALLEGATIONS

14.    Stewart is a well-known screenwriter, composer, editor of science fiction scripts, projects, motion picture films, motion picture reviews, commentaries and critiques, including motion picture manuscripts.

15.    On or about May 1, 1981, Stewart finished an original literary and artistic work consisting of a six-page screen treatment entitled "The Third Eye," a scientific account of futuristic life.

16.    During early 1981, Stewart also finished another original literary and artistic work based on and introducing a complex concept set in the future that was not otherwise published in the early 1980s.

17.    In May 1981 Stewart delivered via federal mails to Twentieth Century's Susan Merzbach, Vice-President of Creative Affairs, a copy of the six-page screen

treatment "The Third Eye." Merzbach read the materials and contacted Stewart, asking whether she had any other materials based on The Third Eye such as screen treatments, and/or scripts that she had authored.

18.     Stewart informed Merzbach that she was working on a full and complete manuscript and would have it finished in the winter of 1983.

19.     Merzbach warranted that if Twentieth Century used Stewart's material in making a motion picture, Stewart would be compensated.

20.     Stewart relied on Merzbach's representation and sent additional materials to Twentieth Century.

21.     On or about November 1, 1983, Stewart originated, created and/or otherwise developed certain literary and artistic work consisting of a 45-page instrument referred to as an "Epic Science Fiction Manuscript" and entitled "The Third Eye," which was an account of life in the future.

22.     Stewart is the legal and beneficial owner of "The Third Eye" aka "Third Eye," and the registrant of United Stated Copyright Office Registration Number Txu 117-610, effective date of registration, February 2, 1983.

23.     Stewart is also the owner of "The Third Eye" and registrant of United States Copyright Number Txu 154-281, February 6, 1984, which includes an add-on manuscript to her original (under Stewart's pseudonym Zenia Kavala), the original draft, illustrations, character analyses and synopses.

24.     Stewart is also the author of "The Makings of the Third Eye."

25.     Stewart's origination, creation and/or development of The Third Eye is her sole and exclusive intellectual property, eligible for federal copyright registration and protection.

26.     Andy Wachowski, an individual residing in Los Angeles, California, is a producer and director of films, and writer of comic books under the business known as A&L Eons Production.

27.     Larry Wachowski, an individual residing in Los Angeles, California, is a producer and director of films, and writer of comic books under the business known as A&L Eons Production.

28.     James Cameron, an individual residing in Los Angeles, California, is a producer and financier of motion picture films.

29.     Joel Silver, an individual residing in Los Angeles, California, is a producer and director of motion picture films.

30.     Twentieth Century Fox Film Corporation is a Delaware Corporation with its principle place of business located in Los Angeles, California.  Twentieth Century Fox produces and distributes motion picture films.

31.     Warner Bros. Entertainment, Inc. is a Delaware corporation with its principle place of business in Los Angeles, California.  Warner Bros. produces and distributes motion picture films.

32.     In 2003, Stewart filed a *pro se* complaint in the United States District Court, Central District of California, Los Angeles, Western Division, Case No. 03-2873-MMM (VBKx), against Andy Wachowski, Larry Wachowski, Thea Bloom, Twentieth

Century Fox Film Corporation, Warner Brothers Entertainment, Inc., James Cameron, Gale Hurd and Joel Silver ("the infringement litigation").

33.     Stewart's *pro se* Complaint alleged that Twentieth Century Fox Film Corporation, James Cameron and Gale Anne Hurd (the "Terminator Defendants") willfully infringed her copyrighted works by making and distributing The Terminator, Terminator 2: Judgment Day and Terminator 3: Rise of the Machines.

34.     Stewart's *pro se* Complaint also alleged that defendants Warner Brothers Entertainment, Inc., Andy Wachowski, Larry Wachowski, Joel Silver, and Thea Bloom (the "Matrix Defendants") willfully infringed her copyrighted literary works by making and distributing The Matrix, The Matrix Reloaded and The Matrix Revolutions.

35.     Stewart's *pro se* Complaint sought damages for copyright infringement, declaratory relief and violations of the Racketeer Influenced and Corrupt Organization Act ("RICO").

36.     In the copyright infringement litigation, Stewart alleged that on or about November 1, 1983, she originated, created, and/ or otherwise developed certain literary and artistic work consisting of a 45 page instrument referred to as an "Epic Science Fiction Manuscript," similarly entitled "The Third Eye," a scientific account of futuristic life. Stewart's origination, creation, and/ or development of the Epic Science Fiction Manuscript of *"The Third Eye"* is plaintiff's sole and exclusive intellectual property, eligible for federal copyright registration and protection.

37.     In the copyright infringement litigation, Stewart alleged that during early 1981, she additionally originated, created, and/ or otherwise developed and original literary and artistic work complex concept that was futuristic and considered not to be

commercially viable in the early 1980s. This fact is illustrated by a letter dated June 8, 1981, that plaintiff received, via federal mails, from Columbia Pictures Industries, Inc.

38.     In the copyright infringement litigation, Stewart alleged that in May 1981, plaintiff delivered, via federal mails, a copy of the six [6] page screen treatment *"The Third Eye"* to Twentieth Century's Susan Merzbach, Vice-President of Creative Affairs. Merzbach read plaintiffs' *"The Third Eye"* and thereafter made a telephone call to plaintiff, via federal interstate wires, inquiring of plaintiff whether plaintiff possessed any other material information, including documents, screen treatment, and/ or scripts that plaintiff had authored based upon plaintiffs' *"The Third Eye."*  Plaintiff informed Merzbach, via federal interstate wires, that plaintiff was proceeding with working upon a full and complete manuscript of the screen treatment entitled *"The Third Eye,"* and that the actual completion of the manuscript would not be available until the winter of 1983. Merzbach suggested in this telephone call that if Twentieth Century used plaintiff's material in making a motion picture, plaintiff would be compensated for the use of her intellectual property. This representation was knowingly false, and plaintiff justifiably relied on the representation and sent additional material to Twentieth Century.

39.     In the copyright infringement litigation, Stewart alleged  In Stewart's previously filed suit, Stewart alleged that during the winter of 1983, she received telephonic contact, via federal-interstate wires, from Twentieth Century's David Madden's office, by and through Madden's authorized representative, Valerie Redd. Redd requested her to promise, warrant, and/ or otherwise affirm that she would submit and tender plaintiff's Epic Science Fiction Manuscript to Twentieth Century. Redd suggested in this telephone call that if Twentieth Century used plaintiff's material in

making a motion picture, plaintiff would be compensated for the use of her intellectual property. Stewart alleged that this representation was knowingly false, and that she justifiably relied on this representation and sent additional material to Twentieth Century.

40.     In the copyright infringement case, Stewart alleged that in October 1983, she received a telephone call from Valerie Redd of David Madden's offices. Redd requested her to immediately submit to her offices a copy of the finished product. Redd repeated her comment that if Twentieth Century used plaintiff's material in making a motion picture, plaintiff would be compensated for the use of her intellectual property. This representation was knowingly false, and plaintiff justifiably relied on this representation and sent additional material to Twentieth Century. In response thereto, in November 1983, plaintiff caused to be mailed, via federal mails, to Redd a copy of the finished product. Subsequently, in or about early 1984, a second telephone call was placed by Redd to plaintiff, advising plaintiff that plaintiff must resubmit the final product by and through an agent. This representation by Redd was knowingly false, as it was designed to cover up the fact that Twentieth Century already had misappropriated plaintiff's intellectual property and provided it for use in creating the movie *The Terminator*. Plaintiff justifiably relied on this representation, and was lulled into believing that she had to take additional steps to interest Twentieth Century in utilizing her intellectual property. Plaintiff complied by resubmitting the product through an agent. Upon receipt of second submission, however, Lora Lee, a Twentieth Century agent/employee, telephoned plaintiff and told plaintiff that plaintiff would have to resubmit the final product, now a third time, that the final product could only be submitted through an agent who was a signatory with the Writer's Guild of America.

Stewart alleged in the underlying case that this representation by Lee was knowingly false, as it was designed to cover up the fact that Twentieth Century already had misappropriated plaintiff's intellectual property and provided it for use in creating the movie *The Terminator.* Stewart alleged that she justifiably relied on this representation, and was lulled into believing that she had to take additional steps to interest Twentieth Century in utilizing her intellectual property. Stewart had originally mailed to Twentieth Century a copy of Plaintiff's protected literary works.

41.    In the copyright infringement case, Stewart alleged that on or about July 1, 1985, Stewart, acting by and through her duly authorized representative, transmitted via federal interstate wires and/ or federal mails, a communication to Twentieth Century, attention, Lora Lee, Story Editor, specifically informing Twentieth Century of plaintiffs' previous verbal communications with Susan Merzbach, and of plaintiff's previous delivery to Twentieth Century's David Madden's offices of the complete 45 page *"The Third Eye"* Epic Science Fiction Manuscript. In addition thereto, plaintiff specifically informed Twentieth Century that the delivery of the 45 page manuscript was affected by federal mails, return receipt requested, and affirmed receipt by Twentieth Century, but no acknowledgement appeared upon the return receipt itself, and that a second copy of the 45 page manuscript was being resubmitted to Twentieth Century.

42.    In the copyright infringement case, Stewart alleged that on July 10, 1985, plaintiff received, by and through plaintiff's duly authorized representative a written communication, via federal mails, from Twentieth Century, Lora Lee, Story editor, wherein Twentieth Century acknowledged the receipt of plaintiff's complete 45 page *"The Third Eye"* Epic Science Fiction Manuscript. Said written letter further stated that

"....there was interest from Fox during a previous administration, I regret to inform you that Fox is only allowed to accept submissions from agents who are signatory with the Writer's Guild of America. Unfortunately, we cannot make exceptions." This representation by Lee was knowingly false, as it was designed to cover up the fact that Twentieth Century had misappropriated plaintiff's intellectual property and provided it for use in creating the movie *The Terminator.* Plaintiff alleged that she justifiably relied on this representation, and was lulled into believing that Twentieth Century had no interest in utilizing her intellectual property.

43.   In the copyright infringement case, Stewart alleged that during the summer of 1986, Andy and Larry (collectively referred to herein after as "the Wachowskis"), caused an advertisement to be placed in a national magazine, which advertisement actively and aggressively solicited screen writers and writing composers of literary works who specifically composed, edited, designed, created, and developed screen treatments for science fiction themes, comic books, writings, and/ or manuscripts, to send such treatments to the Wachowskis.  The advertisement represented that if the Wachowskis utilized such treatments in motion pictures or comic books, the writer would be compensated. This representation was knowingly false, as the Wachowskis engaged in such conduct and activity, intended and designed to feloniously acquire, fraudulently acquire and/or convert said science fiction treatment, manuscript, and/or screen treatment for their personal and/or business commercial exploitation purposes into the production, publication, and distribution for reproduction, and/or distribution of a comic book series. Upon information and belief, the Wachowskis placed this advertisement in the national magazine utilizing the United States mails and/or telephone lines.

44.     In the copyright infringement case, Stewart alleged that The Wachowskis knew that the magazine in which the advertisement appeared would be delivered to subscribers through the United States mail, and knew that writers responding to the advertisement would use the United States mail to send manuscripts or treatments to the Wachowskis.

45.     In the copyright infringement case, Stewart alleged that in the summer of 1986, plaintiff, reasonably relying upon the national advertisement published by the Wachowskis, transmitted, conveyed, and/or otherwise cause to be transported via federal interstate mails to the Wachowskis plaintiff's federal copyright protected six [6] page screen treatment of *"The Third Eye"* and plaintiff's federal copyright protected complete 45 page *"The Third Eye"* Epic Science Fiction Manuscript, including but not restricted to the original draft, graphic illustrations, character analysis, *"The Makings of The Third Eye,'* synopsis, and the creation of *"The Third Eye"* (collectively referred to as "plaintiff's protected literary works"). The Wachowskis did in fact receive plaintiffs' protected literary works. Subsequent to plaintiff's transmission and delivery of plaintiffs' protected literary works to the Wachowskis, plaintiff did not receive any response from them, and the protected literary works were not otherwise returned to plaintiff from the Wachowskis.

46.     In March 1999, the Wachowskis, acting in concert with Silver, Warner Brothers and Bloom, produced a comic book series entitled "The Matrix." This comic book was based and formulated upon plaintiffs' previously delivered federal copyright protected intellectual properties to the Wachowskis. The distribution of this comic book was criminal copyright infringement, in violation of 18 U.S.C. 2319 and 17 U.S.C.

506(a), as the Wachowskis, acting in concert with Silver, Warner Brothers and Bloom, willfully infringed plaintiff's intellectual property in the comic book. Attached hereto and incorporated herein by reference as *Exhibits 9-10* is a copy of the comic book script of the *"The Matrix"* by the Wachowskis.

47.    On March 31, 1999, plaintiff saw the film "The Matrix," and at that time learned that the film and its introduction was derived from her protected literary works. On April 9, 1999, plaintiff inadvertently discovered that the Wachowskis had produced a comic book series entitled *"The Matrix,"* that was based and formulated upon plaintiff's protected literary works.

48.    Defendants the Wachowskis, Silver, Bloom and Warner Brothers have obtained plaintiff's property, and used it as their own property in the making of the motion pictures *The Matrix I, II, and III,* and defendants Cameron, Hurd and Twentieth Century have obtained plaintiff's property, and used it as their own property in the making of the motion pictures *The Terminator I, II, III.* The infringing works demonstrate substantial similarities to the protected literary work on which the plaintiff holds copyrights and that such similarities are of a sort that indicate copying rather than independent creation, coincidence or a prior common source, in that the infringing works have the following specific similarities:

### *The Infringing Work Protected Literary Work*

| *Sophia Stewart-"The Third Eye"* | *"The Matrix I-III"* |
| --- | --- |
| I-Kahn (The One) | Neo, "One", an anagram for One |
| X-sers | Tank |
| (young, 200 lbs.,muscular, abilities) | (same characteristics) |

Kev                                          Apoc

(young, muscular, 230 lbs.)                  (same characteristics)

Old Gypsy Hag                                Oracle

(prophet)                                    (same)

Vashta                                       Morpheus

(45 yrs., 6'0", 170 lbs. strong character,    (same-verbatim)

Wise advisor, participated when called

Upon)

Trifina                                      Trinity

(5'7", 120 lbs., pure heart, playing         (same-verbatim)

Always symbolic major part in the

Background, awareness of all that

Takes place, like an angel)

Awn                                          Cypher

(passive in nature, goes along to a          (same)

Certain extent with what is decided,

Betrayer; keeps to himself, no

abilities)

Trev                                         Mouse

(slender, warm hearted, well                 (same)

Loved, 20 yrs. Old, youthful factors,

Moral support to Neo characters and

the rest)

Zonia                                        Switch

(nondescript lady, no major part)            (same)

3 Levels of Authority                        3 Agents Levels

that became the same men                     that became the same men

Dome Hidden city above Earth                 Zion Hidden city below

(hidden city above ground)                   (Hidden city below ground)

Spacestar Ship                               Nebruchednzzar Ship

(highly computerized futuristic ship)        (highly computerized futuristic ship)

| | |
|---|---|
| Advanced computers (alien being different composition, not human) | Advanced computers (created by computers that are not human) |
| Guardians Eye Logos (guardian human eye logos) | Sentinel Eye Logos (sentinel human eye logos) |
| Rebels (rebel band knows the truth) | Rebels (rebel band knows the truth) |
| Planet with machines (planet with computers and computer networks, planet ruled by them) | Planet with machines (planet with computers and computer networks, planet ruled by them) |
| Epic-Evolution of Consciousness (birth and evolution of consciousness is theme of the story) | Epic-Evolution of Consciousness (birth and evolution of consciousness is theme of story) |
| Narrative (birth and evolution of consciousness Is theme of story) | Narrative (birth and evolution of consciousness is theme of story) |
| Ending (perpetual existence) | Ending (perpetual existence) |
| Begin Again (perpetual existence) Good people walked out of I-kahn (transnormal effect of entry and exit from body) | Begin Again (perpetual existence) Neo jumped into bad guy (transnormal effect of entry and exit from body) |

| | |
|---|---|
| Revolution last chapter | Revolution last movie |
| (last chapter of the Epic is the Revolution) | (last movie of **Matrix** trilogy is called "The Revolution") |
| | |
| I-kahn is blind | Neo is blind |
| (character ascends to power after incurring blindness) | (character ascends to power after incurring blindness) |
| Golden beams emanate from his eyes | Golden beams |
| (character ascends to power after incurring blindness) | (character ascends to power after incurring blindness) |
| | |
| Girl is captured & held as hostage | Morpheus is captured & held as hostage |
| (character captured, held hostage for portrayal) | (character captured, held hostage for portrayal) |
| | |
| Rebels (ship) dies as testament | Rebels (ship) dies as (same) |
| (rebels on ship die in testament and belief that I-kahn is the one) | (rebels on ship die in testament and belief that Neo is the one) |
| I-kahn human side dies (reborn) | Neo human side dies (reborn) |
| (reborn without corruption) | (reborn without corruption) |
| | |
| I-kahn is foretold as the one | Neo is foretold as the one |
| (prophecy foretold character as the one) | (prophecy foretold character as the one) |
| | |
| Plot introduction year 2110 A.D. | Plot introduction |
| (time frame) | (time frame) |
| | |
| I-kahn spiritual happening | Neo computer happening |
| (hallucinatory awakening, self | (hallucinatory awakening, self |

15

| | |
|---|---|
| recognition to his purpose) | recognition to his purpose) |
| Rebels (ship) knew he was the One | Rebel (ship) knew Neo |
| (rebel band recognized I-kahn was the one and pointed him out to each other) | (rebel band recognized Neo was the one and pointed him out to each other) |
| Hunting for the ship to kill rebels (government sent sentinels to hunt down and kill rebel band) | Sentinels were the doing same (government had sentinels to hunt down and kill rebel band) |
| Special effects (I-kahn and rebel band send forth optical projections of images of themselves to engage iIn battle) | Special effects (Neo and rebel band send forth optical projections of images of themselves to engage in battle) |
| Programmed the mind-computerized warfare- to teach (programmed the mind for Computerized warfare and combat) | Programmed the mind (same) (programmed the mind for computerized warfare and combat) |
| In space I-kahn develops his alien side & comes into power (In space I-kahn develops its alien side and inherits special powers) | In space, Neo develops powers (In space, Neo develops his alien side and inherits special powers) |
| **_Sophia Stewart-"The Third Eye"_** | **_"The Terminator I-III"_** |
| Quote: "We will be back" | Quote: "I'll be back" |
| Identical plot | Identical plot |
| Identical characters | Identical characters |
| Identical settings | Identical settings |
| Spans past, present, and future | Spans past, present, and future |

16

| Iceus | Sarah Connors |
|---|---|
| (mother expecting child destined | (mother expecting a child destined to |
| to destroy computers in the future) | destroy computers in the future |

49.     Stewart was unable to prove these allegations as a result of Defendants actions as alleged herein.

50.     During or before July 2004, Defendant Lubell solicited and contacted Stewart at her residence in Utah with the intent of obtaining Stewart as a client with respect to the copyright infringement litigation.

51.     Between July 2004 and July 2005, Lubell, Stoller and Brown at various times communicated with Stewart at her Utah residence.

52.     During that time, Defendants misrepresented the status of the litigation to Stewart.

53.     Stewart relied upon Defendants representations regarding the litigation.

54.     Stewart was unaware that Defendants were not properly handling her case.

55.     At the time when Lubell solicited Stewart, Lubell presented himself as an expert and assured Stewart that he would assemble a competent legal team to assist her with her case.

56.     Stewart relied upon Lubell's representations.

57.     On or about July 12, 2004, Defendant Gary Brown filed a *Notice of Appearance of Counsel* on Stewart's behalf in the copyright infringement litigation.

58.     Brown sponsored Michael Lubell's and Dean Webb's applications to appear Pro Hac Vice on Stewart's behalf, which the Court approved.

59.     Brown, Lubell and Webb thereafter drafted and filed Stewart's *First Amended Complaint*.

60.     On or about July 26, 2004, the defendants in the infringement litigation filed a motion to dismiss and strike paragraphs of Stewart's First Amended Complaint. A hearing was set for August 23, 2004.

61.     On or about August 4, 2004, the Court in the infringement litigation issued an order setting the case for a Scheduling Conference on September 27, 2004.  Counsel were directed to file a Joint Rule 26(f) Report on or before September 17, 2004.

62.     On September 27, 2004, the Court in the infringement action denied the defendants' motions to dismiss, but granted their motion regarding the RICO claim with leave for plaintiff to file an amended complaint.

63.     On or about January 3, 2005, Lubell and Brown filed and served Stewart's Second Amended Complaint in the infringement action.

64.     On January 13, 2005, Dean Webb withdrew as Stewart's counsel in the infringement action.

65.     On January 25, 2005, the Matrix defendants in the infringement action served requests for documents on Stewart's counsel, Brown and Lubell.

66.     On January 25, 2005, the Matrix/Terminator defendants in the infringement action served a Notice of Deposition for Stewart's deposition, setting it for February 22, 2005.

67.     Stewart was scheduled to produce documents on February 15, 2005, one week before her scheduled deposition.

68.     February 15, 2005, Lubell and Brown did not disclose any documents on Stewart's behalf.

69.     On February 16, 2005, counsel to the defendants in the infringement action faxed a letter to Lubell and Brown wherein he stated that he had not received any documents in response to the demand and that any written responses or objections should be produced no later than February 17, 2005.  He also confirmed that Stewart's deposition was set for February 22, 2005.

70.     On February 17, 2005, counsel to the defendants in the infringement action called Brown to ask him if Stewart's deposition was going forward.  Brown responded that he was "buried in other work" and that he would need to call Lubell, since he would be covering the deposition.  Brown stated that he would call counsel to the defendants in the infringement action back that afternoon; he did not.

71.     On February 18, 2005, counsel to the defendants in the infringement action sent a letter to Lubell and Brown advising them that he had been trying to contact them regarding the deposition and that Brown was not returning his calls.

72.     On February 18, 2005, counsel to the defendants in the infringement action received a voice mail message from Brown advising him that Stewart was not available and could not attend the deposition.

73.     Stewart was available to attend the deposition.

74.     The assertion that Stewart was not able to attend the deposition was false.

75.     In the voicemail, Brown asked if Stewart's deposition could be continued until after March 21, 2005 (the date upon which the motion to dismiss the RICO claims would be heard).  Counsel to the defendants in the infringement action called back and rejected this proposal.

76.     Later that afternoon, counsel to the defendants in the infringement action received a letter from Brown indicating that Lubell would not be able to defend Stewart's deposition on February 22, 2005.  Brown also indicated that he would be the one preparing Stewart for her deposition.

77.     Brown and Lubell unilaterally cancelled Stewart's deposition one business day before it was scheduled to take place.  They did so without responding to any of the outstanding discovery requests, including Requests for Admissions, Special Interrogatories and Request for Production of Documents.

78.     Brown then wrote a letter proposing three alternate dates for Stewart's deposition.  He also requested that all documents be produced no later than March 1, 2005.

79.     On Monday, February 21, 2005 (President's Day), Bruce Isaacs, counsel for the Matrix and Terminator Defendants, received a call from Stewart's friend indicating that Stewart was uncertain whether her deposition was going forward.  She was questioning whether she needed to get on a flight to Los Angeles.

80.     Boren spoke with Lubell on February 24, 2005, at which time Lubell assured Boren that Stewart would be produced for her deposition.  Boren advised Lubell that Stewart had waived her objections to Defendants' Document Requests.

81.     Lubell indicated that he would produce the documents by March 14, 2005.

82.     Lubell represented that Stewart would be produced for her deposition on March 17, 2005.  Thereafter, counsel to the defendants in the infringement action confirmed this arrangement in writing with Lubell and Brown.

83.     Stoller became Stewart's attorney of record on March 7, 2005.

84.   On March 14, 2005, Lubell and Brown failed to produce documents despite their written assurances that they would do so. At 4:00 p.m. that day, Issacs spoke with Stoller who indicated that there was a problem with the document production and that the documents would be delivered the next day.

85.   At 5:45 on Tuesday, March 15, 2005, counsel to the defendants in the infringement action wrote to Stoller indicating that he had not yet received any documents as promised the day earlier.

86.   On the morning of March 16, 2005, Stoller advised counsel to the defendants in the infringement action that Brown's condition was more serious than first thought. With respect to the documents, Stoller indicated that he had a stack of documents 3-4 inches thick and that he would do his best to get the documents to his office that day. Counsel to the defendants in the infringement action reminded Stoller that Stewart's deposition was set for March 17, 2005. At approximately 3:00 p.m. on March 16, 2005, Stoller called to advise that the documents would be delivered to his office later that day, which they were.

87.   Stoller also advised counsel to the defendants in the infringement action that he was unilaterally cancelling Stewart's deposition, yet again, notwithstanding that both Lubell and he were available to defend it.

88.   Stoller advised counsel to the defendants in the infringement action that Lubell had arrived in Los Angeles to defend Stewart's deposition.

89.   On March 17, 2005, at 9:30 a.m., Julia A. Douville, a certified shorthand reporter in and for the State of California, certified that Stewart did not appear for her scheduled deposition.

90.     Attorney Bruce Isaacs made a record of the events leading up to Stewart's scheduled deposition.

91.     The parties appeared before the Court on March 21, 2005, in connection with the hearing on the Matrix/Terminator Defendants' Motions to Dismiss.

92.     Isaacs advised the Court that the Matrix/Terminator Defendants intended to file a motion to preclude Stewart's testimony entirely because she had twice failed to appear for her deposition and the discovery cut-off was scheduled for March 25, 2005.

93.     On March 25, 2005, the discovery cut-off date and almost two years since Stewart filed her initial Complaint, Lubell, Stoller and Brown filed Stewart's first requests for discovery.

94.     On February 2, 2005, Fox, Cameron and Hurd each served their First Set of Requests for Admission and First Set of Special Interrogatories on Stewart in the infringement litigation.  Lubell, Brown, Webb and Stoller were obligated to respond to the discovery on Stewart's behalf no later than March 7, 2005.

95.     On March 3, 2005, Lubell wrote an e-mail to counsel to the defendants in the infringement action wherein he requested an extension of time until April 1, 2005 within which to respond to the Discovery.

96.     On March 4, 2005, counsel to the defendants in the infringement action responded to Lubell's e-mail, stating that Stewart could have an extension to respond to the Discovery, but only until March 14, 2005, because the Matrix/Terminator Defendants needed to have Stewart's responses to the Discovery prior to her deposition, which was then scheduled for March 17, 2005.

97.     In his e-mail, counsel to the defendants in the infringement action stated that if Lubell did not agree to the March 14, 2005 response date, that the responses to the Discovery would still be due on March 7, 2005.

98.     Lubell did not respond to Boren's e-mail, making the responses due on March 7, 2005.

99.     Stewart's lawyers failed to respond or object to any of the Discovery on or before March 7, 2005.

100.     Stewart's lawyers did not respond or object to any of the Discovery on or before March 14, 2005.

101.     Stewart's lawyers did not respond or object to any of the Discovery on or before April 1, 2005 – Stoller's proposed date.

102.     As of the date of the filing of the Matrix/Terminator Defendants Motion for Summary Judgment and Motion to Preclude Stewart's Testimony, Stewart's counsel had tendered no responses to defendants' discovery requests.

103.     Lubell, Brown and Stoller ignored the discovery, which resulted in dismissal of Stewart's infringement action.

104.     On March 25, 2005, the Court-ordered fact discovery deadline, Lubell, Stoller and Brown filed *Plaintiff's Ex Parte Application to Continue the Discovery, Motion Cut-Off Dates, Etc., and/or Trial; Memorandum of Points and Authorities; Declaration of Jonathan Lubell and Michael T. Stoller in Support Thereof*, in which counsel requested to extend cut-off date and/or trial "based on good cause as forth [there]in."

105.    The request was made "on the grounds that plaintiff's counsel are unable to complete discovery and prepare this matter for trial occasioned from Mr. Brown's recent heart attack and the fact that plaintiff had just recently retained Michael Stoller to replace Dean Browning Webb."

106.    In the Memorandum of Points and Authorities, Stoller wrote that "based on having to respond to defendant's motion to dismiss and withdrawal of Mr. Webb, plaintiff was unable to address the discovery responses until recently."

107.    Stoller also indicated that Brown's medical condition impacted the ability to provide the discovery responses and that the situation also "impacted preparing plaintiff for her deposition; therefore plaintiff's counsel gave notice that plaintiff's deposition would need to be rescheduled."

108.    Stoller wrote that he learned of the discovery and motion cut-off date for the first time at the March 21, 2005 hearing.

109.    Stoller, Lubell and Brown never advised Stewart that they unilaterally cancelled her deposition.

110.    Stewart never authorized Stoller, Lubell and Brown to continue her deposition.

111.    Stewart was prepared to be deposed and tell her story under oath regarding her creation of the Third Eye and Warner Brothers' access thereto.

112.    Stoller, Lubell and Brown precluded Stewart's testimony by failing to following the Federal Rules of Civil Procedure and producing Stewart pursuant to the Notice of Deposition.

113.    Stoller concluded:

Based on plaintiff's counsel's medical situation and the association of new counsel as set forth above, good cause exists for an order extending the cut-off dates and trial. If the court adopts the original time frames proposed in the Joint Scheduling Conference Report, with the exception of the non-expert discovery dates being extended from June 30, 2005 to July 29, 2005, then notwithstanding any further defense motions to the pleadings, the case will move forward and be ready for trial should the matter not resolve prior.

114.    In support of the motion, Lubell declared:

I became associated as one of plaintiff's counsel in July of 2004. At that time Ms. Stewart also had as her counsel in this case Dean Webb, who presented himself as an expert in RICO matters. A division of responsibility was developed with Mr. Webb addressing the RICO issues, attorney Gary Brown handling the local daily matters and my addressing the copyright issues and coordinating the legal efforts."

115.    Lubell further "explained" why no discovery had been issued or responded to, other than the belated document disclosure.

116.    On April 4, 2005, Judge Morrow issued her order denying Plaintiff's Ex Parte Application for Continuance of Case Management Date.

117.    In her order, Judge Morrow found that Stewart had failed to respond in a timely fashion to discovery propounded by defendants or to appear for her deposition.

118.    Judge Morrow found that the four attorneys working on Stewart's case were not excused by Brown's illness or the work load required by the motions to dismiss.

119.    Judge Morrow found that all of Stewart's proposed discovery was untimely since it could not be completed and responded to before the discovery cut-off date.

120.    In ruling against Stewart, Judge Morrow found:

The record before the court shows that plaintiff has not been diligent either in pursuing or in responding to discovery. Despite the fact that the action had been on file for almost two years, she made not effort to propound any discovery to defendants until the fact discovery cut-off date set by the

25

court.  Nor did she respond in timely fashion to discovery propounded by
defendants.  This is consistent with the overall manner in which plaintiff
has prosecuted the action, missing deadlines, seeking extensions, and
generally ignoring the Federal Rules of Civil Procedure and court orders.
Under these circumstances, the court cannot find that plaintiff has been
diligent in attempting to meet the timetable set forth for discovery in the
scheduling order."

121.    The court found that "[a]lthough two of plaintiff's three attorneys attempt

to excuse this lack of diligence by asserting that they were ignorant of the discovery cut-

off, this does not constitute good cause for modification of the scheduling conference

order."

122.    The Court denied Stewart's attorneys' request.

123.    On April 29, 2005, the Terminator Defendants filed their motion for

summary judgment.  The Terminator Defendants noticed their motion for summary

judgment to be heard on May 23, 2005 (the motion cut-off date).

124.    Stewart's opposition to the motion was originally due on May 9, 2005.

125.    Judge Morrow, sua sponte, continued the date on the motion for summary

judgment to June 13, 2005.  She also issued an order setting a briefing schedule, wherein

the Court ordered Stewart to file her opposition to the motion for summary judgment not

later than May 16, 2005.

126.    On May 16, 2005, Stewart's attorneys, Lubell, Stoller and Brown did not

file any opposition to the Terminator Defendant's motion for summary judgment (and did

not oppose the Matrix Defendants' motion for summary judgment).

127.    On May 23, 2005, the Terminator Defendants filed their *Notice of Non-

Opposition to their Motion for Summary Judgment*.

128.    On May 31, 2005, the Court issued an order denying Stewart's Rule 60(b) motion but permitting her to file opposition papers to the summary judgment motions no later than June 3, 2005.

129.    On June 3, 2005, Stewart's attorneys, Lubell, Stoller and Brown, did not file her opposition to the Terminator Defendants' motion for summary judgment.

130.    On June 6, 2005, three days after Stewart's opposition papers were due, her attorneys filed and served her opposition to Terminator Defendants' motion for summary judgment.

131.    On June 13, 2005, Judge Morrow issued her order granting the Matrix Defendants' and the Terminator Defendants' motions for Summary Judgment.

132.    In her ruling, Judge Morrow started by stating "[v]irtually every fact in this action is disputed." (June 13, 2005, Order, page 2).

133.    The primary issues in the case were whether defendants had "access" to Stewart's work and whether her works were substantially or strikingly similar to the Matrix and Terminator trilogies.

134.    Judge Morrow noted that Fox had access to Stewart's protected works in the 1980s when she sent a copy of the six page treatment to Fox's Vice President of Creative Affairs and a copy of her completed manuscript to David Madden.

135.    Lubell, Stoller and Brown never deposed either Madden or the Vice President of Creative Affairs.

136.    In the Terminator Defendants' motion for summary judgment, they relied on Stewart's "admissions" – the discovery requests her attorneys neglected to respond to – to establish that: (1) no person at Fox was involved in any way in creating, writing,

developing or producing Terminator 1, 2 or 3; (2) Stewart has no factual basis or

evidence to support the allegation that Fox provided Cameron a copy of the movie

treatment and 47-page manuscript; (3) Stewart has no factual basis or evidence to support

the allegation that Fox provided Hurd a copy of the treatment or 47-page manuscript; (4)

Stewart has no factual basis or evidence to support the contention that Fox provided any

person connected with Terminator 1, 2 or 3 a copy of the treatment or 47-page

manuscript; (5) Cameron did not have access to the treatment or the 47-page manuscript;

and (6) Hurd did not have access to the treatment or the 47-page manuscript.

      137.    Lubell, Stroller and Brown failed to deny the Requests for Admissions,

resulting with the dismissal of Stewart's case.

      138.    Lubell, Stroller and Brown failed to depose Hurd, Cameron or anyone in

order to establish the evidence to support Stewart's claim.

      139.    As a result of Lubell's, Stoller's, and Brown's failure, Stewart was unable

to present her case in court.

      140.    The evidence supporting Stewart's claim of ownership to the Matrix and

Terminator trilogies has never been properly developed and presented in a court of law.

      141.    Judge Morrow found that "Stewart, who bears the burden of proof on this

issue, must therefore adduce contradictory evidence that raises a triable issue of fact

regarding access.  The only evidence Stewart proffers regarding access is her own

declaration and certain documents attached thereto.  In a separate order, the court has

precluded Stewart from offering testimony in opposition to defendants' motions for

summary judgment.  Thus, none of the evidence she submits may be considered, and no

triable issue of fact defeating summary judgment has been raised."

142.    Judge Morrow went on to state that even if she were to consider Stewart's affidavit, in which Stewart stated that Fox employees Susan Meszbach and David Madden had access to her work, the statement lacks the proper legal foundation.

143.    Lubell, Stoller and Brown failed to depose Meszbach and Madden regarding this issue, thereby preventing Stewart from proving "access" to her materials by the Terminator Defendants.

144.    Lubell, Stoller and Brown failed to develop admissible evidence that Meszbach and Madden went to Paramount, that Paramount had a role in the creation of the Terminator films or that Paramount provided copies of the Third Eye to Cameron and/or Hurd.

145.    Judge Morrow also specifically found that "Stewart is barred from presenting evidence that directly contradicts her admission that Fox had no role in creating, writing, developing or producing Terminator 1, 2, or 3."

146.    Lubell, Stoller and Brown submitted inadmissible newspaper articles on Stewart's behalf in an effort to show that Fox had a role in the development of the Terminator trilogy.

147.    Lubell, Stroller and Brown neglected to develop any admissible evidence to prove this element of the case.

148.    As a result of their failure, Stewart was prejudiced and her case dismissed.

149.    Lubell, Stroller and Brown proffered an inadmissible hearsay statement in her declaration regarding statements certain FBI agents made to Stewart.

150.    Rather than taking sworn statements from the agents themselves, Lubell, Stroller and Brown attempted to introduce this hearsay evidence through Stewart.

151.    Judge Morrow found that the statements that "the FBI explained to her in 2001 that the Terminator series and the Matrix trilogies were from the same source work," and that "all the key characters in the Matrix movie had been identified from Stewart's work" were inadmissible hearsay.

152.    Judge Morrow found that Stewart's documentary evidence from the FBI was inadmissible in that it was "unauthenticated."

153.    Lubell, Stroller and Brown knew or should have known that many portions of Stewart's declaration contained inadmissible evidence.

154.    In granting summary judgment, Judge Morrow ruled that no reasonable juror could conclude, based on the evidence adduced, that the creators of the Terminator films had access to the Third Eye literary works.

155.    Lubell, Stroller and Brown failed to follow the Federal Rules of Civil Procedure and the Federal Rules of Evidence.

156.    With respect to the Matrix Defendants, Judge Morrow again referenced Stewart's "admissions," specifically finding that they establish: (1) no one at Warner Bros. had access to the six-page treatment or the 47-page manuscript prior to the creation of Matrix 1; (2) Larry and Andy Wachowski did not place an advertisement soliciting works of science fiction in a national magazine; (3) Stewart never submitted the treatment or the 47-page manuscript to Larry Wachowski, Andy Wachowski, Silver or Bloom; (4) Larry Wachowski, Andy Wachowski, Silver and Bloom did not have access to the six-page treatment or the 47-page manuscript prior to the creation of Matrix 1, 2 or 3; and, (5) Larry and Andy Wachowski independently created Matrix 1, 2 and 3.

157.    Judge Morrow also found that "Stewart also admitted that no one connected with Matrix 1, 2 and 3 had access to the treatment or the 47-page manuscript.

158.    Lubell, Stroller and Brown failed to depose any of these witnesses or develop any admissible evidence supporting Stewart's claim.

159.    Lubell, Stroller and Brown "admitted" facts directly contrary to Stewart's allegations in her First Amended Complaint for the purpose of interfering with Stewart's presentation of her case in the United States Federal District Court, Western District of California.

160.    Lubell, Stroller and Brown did not depose Terasa Wayne or anyone at Warner Brothers to prove that Stewart submitted her work to them.

161.    Lubell, Stroller and Brown never requested Warner Bros. computerized database which may contain the submission.

162.    Lubell's, Stroller's and Brown's failure to conduct and discovery, coupled with their failure to respond to defendants discovery and dispositive motions, resulted in the dismissal of Stewart's lawsuit, on the merits, without ever having her evidence properly submitted and considered by a court of law.

163.    On June 13, 2005, United Stated Federal District Court Judge Margaret Morrow dismissed Stewart's lawsuit on the defendants' Motion for Summary Judgment.

164.    Judge Morrow ruled that Stewart and her attorneys failed to diligently prosecute the matter, failed to respond to discovery and failed generally to follow the Federal Rules of Civil Procedure, resulting in summary judgment in defendants' favor without the proper presentation and consideration of Stewart's evidence.

165.    But/for Defendants' actions, Stewart would have prevailed in her case against the Matrix/Terminator Defendants.

166.    Defendants repeatedly assured Stewart at her residence in Utah, through telephone contact, mail and e-mail, that her case was proceeding according to plan.

167.    Defendants failed to advise Stewart that they had neglected the case as specified herein.

168.    Defendants concealed their acts and omissions from Stewart.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
(Breach of Contract)

169.    Plaintiff repeats and re-alleges each and every allegation contained herein.

170.    On or before September 21, 2004, Lubell contacted Stewart, a Utah resident, for the purpose of offering to provide legal services to Stewart in connection with the trademark infringement case.

171.    Lubell drafted a written fee agreement wherein he, Dean Browning Webb and Gary S. Brown contracted to provide legal services in connection with the trademark infringement case.

172.    The agreement was sent to Stewart in Utah.

173.    Stewart executed the agreement in Utah.

174.    The agreement provided for a $50,000.00 payment, as well as a 50% contingency fee.

175.    Stewart paid the $50,000.00 and has otherwise performed her obligations under the contract.

176.   On or about March 7, 2005, Defendant Stoller joined Stewart's defense team and also contracted with Stewart.

177.   Lubell, Brown and Stoller breached the contract by failing to perform their obligations.

178.   Lubell's, Brown's and Stoller's contractual breaches are beyond outrageous and evinces a deliberate and reckless indifference toward Stewart and her right, warranting punitive damages.

179.   As a result of Defendants' breaches, Stewart has suffered compensatory damages not less than $150,000,000.00.

180.   As a result of Defendants' breaches, Stewart is entitled to an award of punitive damages.

## SECOND  CAUSE OF ACTION
(Breach of Covenants of Good Faith and Fair Dealing)

181.   Plaintiff repeats and incorporates each of the foregoing allegations.

182.   Obligations to deal with Stewart fairly and in good faith were inferred in the retainer agreement and contractual relationship between the parties.

183.   Defendants were obligated to deal with Plaintiff fairly and in good faith.

184.   Defendants did not deal with Plaintiff fairly or in good faith.

185.   Defendants failed to do anything to fulfill their contractual obligations.

186.   Defendants' failure to perform proper legal work on Stewart's behalf breaches of the implied covenant of good faith and fair dealing evince a deliberate and reckless indifference toward Plaintiff and her rights.

187.   Defendants' pervasive breaches of the implied covenant of good faith and fair dealing are beyond outrageous and warrant – among other sanctions – an award of punitive damages.

### THIRD CAUSE OF ACTION
(Malpractice)

188.   Stewart repeats and re-alleges each and every allegation contained herein.

189.   Stewart and Defendants entered into a contract for legal services in the State of Utah.

190.   Defendants solicited Stewart at her residence in Utah for the purpose of representing her in the copyright litigation.

191.   Defendants had a professional obligation to use the appropriate care in handling Plaintiff's underlying infringement litigation.

192.   Defendants breached that duty by:

- Failing to communicate with Stewart to professional standards regarding the actual events of her case;

- Affirmatively misrepresenting the status of the case to Stewart at her Utah residence;

- Failing to advise Stewart of the actual status of her case;

- Failing to obtain Stewart's consent to continue discovery;

- Failure to properly represent Plaintiff's interests in the underlying litigation;

- Failing to respond to discovery;

- Failing to advise Stewart that they had failed to respond to discovery;

- Failing to deny Requests for Admissions;

- Failing to produce Stewart for her deposition, resulting in the preclusion of Stewart's testimony from the court's consideration;

- Failing to propound any discovery;

- Failing to take any depositions;

- Failing to timely file Stewart's opposition to defendants' motions for summary judgment;

- Failing to introduce the Matrix and Terminator movies into evidence to establish "substantial similarity";

- Failing to introduce admissible evidence of "access" to the Court;

- Failing to conduct discovery within the court-ordered time limits; and,

- Otherwise being negligent.

As a result of Defendants' negligence, the copyright infringement case was dismissed without Stewart's evidence ever having been properly developed and presented to the Court.

193.    As a result of Defendants' negligence, Stewart has been damaged in an amount not less than $150,000,000.00 in compensatory damages.

## FOURTH CAUSE OF ACTION
### (Civil Conspiracy)

194.    Plaintiff repeats and incorporates each of the foregoing allegations.

195.    Defendants failed to perform any meaningful legal services on Plaintiff's behalf in order to properly advance her interests in the litigation.

196.    Defendants failed to initiate any discovery, failed to timely answer

discovery, failed to produce Stewart for her deposition and otherwise impeded, rather than advanced, Stewart's interests.

197.   Upon information and belief, Defendants conspired with other unknown persons with the purpose and intent of impeding Stewart's underlying litigation.

198.   As it stands, although the copyright infringement case was dismissed, Stewart's evidence was never properly considered.

199.   Upon information and belief, Defendants conspired against Stewart so that her evidence would not be properly considered.

200.   As a result of Defendants' wrongful acts, Stewart has been damaged in a sum of not less than $150,000,000.00 in compensatory damages.

201.   As a result of Defendants' wrongful acts, Stewart is entitled to an award of punitive damages.

### FIFTH CAUSE OF ACTION
(Fraud)

202.   Plaintiff repeats and incorporates each of the foregoing allegations.

203.   Defendants failed to perform any meaningful legal services on Plaintiff's behalf in order to properly advance her interest in the litigation.

204.   Defendants failed to initiate any discovery, failed to timely answer discovery, failed to produce Stewart for her deposition and otherwise impeded, rather than advanced, Stewart's interests.

205.   Upon information and belief, Defendants conspired with other unknown persons with the purpose and intent of impeding Stewart's underlying litigation.

206.   As it stands, although the copyright infringement case was dismissed, Stewart's evidence was never properly considered.

207.    Upon information and belief, Defendants conspired against Stewart so that her evidence would not be properly considered.

208.    Plaintiff paid Defendants $50,000.00 to represent her interests.

209.    Defendants represented that they would adequately represent Plaintiff's interests.

210.    Plaintiff relied upon Defendants' statements and representations.

211.    Defendants' statements and representations that they would each perform adequate, competent legal work was false.

212.    Defendants did not provide adequate, competent legal work.

213.    Defendants defrauded Stewart and prevented her from proving her copyright infringement case.

214.    Defendants failed to represent Plaintiff's interests and instead conspired to work against her and defeat her claim.

215.    Defendants defrauded Stewart by taking her money, failing to perform adequate legal services and otherwise squandering her opportunity to present her claims against the Matrix/Terminator defendants.

216.    As a result of Defendants' wrongful acts, Stewart has been damaged in a sum of not less than $150,000,000.00 in compensatory damages, plus punitive damages.

217.    As a result of Defendants' wrongful acts, Stewart is entitled to an award of punitive damages.

## SIXTH CAUSE OF ACTION
### (Breach of Fiduciary Duty)

218.    Stewart repeats and re-alleges each and every allegation contained herein.

219.   Defendants had a fiduciary duty to Stewart in handling her copyright infringement litigation.

220.   Defendants breached that duty by:

- Failing to communicate with Stewart to professional standards regarding the actual events of her case;

- Affirmatively misrepresenting the status of the case to Stewart at her Utah residence;

- Failing to advise Stewart of the actual status of her case;

- Failing to obtain Stewart's consent to continue discovery;

- Failure to properly represent Plaintiff's interests in the underlying litigation;

- Failing to respond to discovery;

- Failing to advise Stewart that they had failed to respond to discovery;

- Failing to deny Requests for Admissions;

- Failing to produce Stewart for her deposition, resulting in the preclusion of Stewart's testimony from the court's consideration;

- Failing to propound any discovery;

- Failing to take any depositions;

- Failing to timely file Stewart's opposition to defendants' motions for summary judgment;

- Failing to introduce the Matrix and Terminator movies into evidence to establish "substantial similarity";

- Failing to introduce admissible evidence of "access" to the Court;

- Failing to conduct discovery within the court-ordered time limits; and,

- Otherwise being negligent.

221.    As a result of Defendants' breach, the copyright infringement case was dismissed without Stewart's evidence ever having been properly developed and presented to the Court.

222.    As a result of Defendants' breach of fiduciary duty, Stewart has been damaged in an amount not less than $150,000,000.00.

### SIXTH CAUSE OF ACTION
(Conversion)

223.    Stewart repeats and re-alleges each and every allegation contained herein.

224.    Stewart paid Defendants approximately $50,000.00 to advance her case.

225.    Defendants accepted the money and failed to perform any meaningful legal services on Stewart's behalf.

226.    Defendants wrongfully converted Stewart's assets without providing adequate or fair consideration in return.

227.     As a result, Stewart has been damaged and is entitled to compensatory and punitive damages.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against defendants as follows:

1.      For compensatory damages not less than One Hundred Fifty Million and 00/100 ($150,000,000.00);

2.      For punitive damages in an amount to be determined by the Court;

3.      For recovery of costs and attorneys fees;

4.    For pre-judgment interest; and

5.    For such other and further relief as the Court deems just and proper under

the circumstances.


Dated:  July 30, 2007                    EDWARD W. McBRIDE, JR., P.C.



                                         _____
                                         Edward W. McBride, Jr.
                                         Attorney for Plaintiff
                                         Sophia Stewart



## JURY DEMAND

Plaintiff demands a trial by jury on all issues herein.  Plaintiff has already paid the

appropriate fee.

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a)   PLAINTIFFS**

Sophia Stewart

**(b)**   County of Residence of First Listed Plaintiff   Scott Lake
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)**   Attorney's (Firm Name, Address, and Telephone Number)
Edward McBele    801-531-1010
1061 300 S.  Sec  Ut  84111

**DEFENDANTS**

FILED US DISTRICT COURT

John Stoller    2007 JUL 30  D 3: 53

County of Residence of First Listed Defendant   UTAH
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

BY:  DEPUTY CLERK

Attorneys (If Known)

**II. BASIS OF JURISDICTION**   (Place an "X" in One Box Only)

☐ 1   U.S. Government
Plaintiff

☐ 2   U.S. Government
Defendant

☐ 3   Federal Question
(U.S. Government Not a Party)

☒ 4   Diversity
(Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)    and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☒ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☒ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

**V. ORIGIN**   (Place an "X" in One Box Only)

☒ 1   Original
Proceeding

☐ 2   Removed from
State Court

☐ 3   Remanded from
Appellate Court

☐ 4   Reinstated or
Reopened

☐ 5   Transferred from
another district
(specify)

☐ 6   Multidistrict
Litigation

☐ 7   Appeal to District
Judge from
Magistrate
Judgment

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):   Diversity - 9 USC 1332

Brief description of cause:   breach of contract / malpractice / fraud

**VII. REQUESTED IN
COMPLAINT:**

☐ CHECK IF THIS IS A CLASS ACTION
UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

**VIII. RELATED CASE(S)
IF ANY**
(See instructions):

JUDGE

DOCKET NUMBER

DATE   7/30/07

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #          AMOUNT          APPLYING IFP

Case: 2:07cv00552
Assigned To : Kimball, Dale A.
Assign. Date : 7/30/2007
Description: Stewart v. Stoller et al