IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| SOPHIA STEWART,<br><br>                      Plaintiff,<br><br>v.<br><br>MICHAEL T. STOLLER, et al.,<br><br>                      Defendants. | **REPORT AND RECOMMENDATION REGARDING DEFAULT JUDGMENT AGAINST JONATHAN LUBELL**<br><br>Case No. 2:07-cv-552-DB-EJF<br><br>Judge Dee Benson<br><br>Magistrate Judge Evelyn J. Furse |

**I. Procedural History**

On August 1, 2007, Ms. Stewart filed her Amended Complaint against Defendants Michael T. Stoller, Jonathan Lubell, Dean Webb, Gary Brown, and a number of unidentified John Does for breach of contract, breach of the covenant of good faith and fair dealing, malpractice, civil conspiracy, fraud, breach of fiduciary duty, and conversion. (ECF No. 2.) The Amended Complaint seeks damages of not less than $150 million. (*Id.*) The Court previously dismissed Ms. Stewart's case as against Defendants Webb, (ECF No. 145), Brown, (ECF No. 254), and Stoller, (ECF No. 267), and denied her leave to amend to name John Doe defendants, (ECF No. 75). Only Jonathan Lubell remains as a Defendant.

The Clerk of Court entered a default certificate against Mr. Lubell on August 28, 2012. (ECF No. 196.) Ms. Stewart then filed a Motion for Default Judgment on September 28, 2012. (ECF No. 200.) On December 4, 2012, District Judge Clark Waddoups[1] granted that motion in

---

[1] On May 26, 2009, Judge Clark Waddoups referred this case to Chief Magistrate Judge Brooke C. Wells under 28 U.S.C. § 636(b)(1)(B). (ECF No. 67.) This referral was reassigned to the undersigned Magistrate Judge on May 21, 2012. (ECF No. 191.) Judge Waddoups recused himself on December 13, 2012, and Judge Dee Benson now sits on this case. (ECF No. 234.)

-1-

part but declined to enter judgment in the amount Ms. Stewart requested. (ECF No. 219.) Instead, the Order stated "Judgment will be entered against [Mr. Lubell] upon the submission by Plaintiff of evidence to support the amount of damages to be entered in the judgment." (*Id.*)

As of August 2013, Ms. Stewart had not submitted any evidence to support her request for default judgment against Mr. Lubell. The Court therefore entered an Order to Show Cause directing Ms. Stewart to "inform the Court as to the status of the case and her intentions to proceed," noting failure to do so would result in a recommendation of dismissal. (ECF No. 257.) Ms. Stewart filed her "Motion for Judicial Notice to Prove Damages and Affidavit of Sophia Stewart" on September 9, 2013. (ECF No. 260.) In that Motion Ms. Stewart asked the Court to take judicial notice of profits related to the films at issue in the California copyright case underlying this malpractice action. (*See id.*) This Court determined it could not take judicial notice of the facts offered by Ms. Stewart and denied that Motion. (ECF No. 270.) Instead, the Court held an evidentiary hearing on damages, pursuant to Federal Rule of Civil Procedure 55(b)(2), on June 25, 2014. (ECF No. 279.)

## II. Legal Standard

Federal Rule of Civil Procedure 55(a) provides for default against a party that "has failed to plead or otherwise defend" itself. Fed. R. Civ. 55(a). Plaintiffs whose claims are not "for a sum certain or a sum that can be made certain by computation" must apply to the court for entry of a default judgment. Fed. R. Civ. P. 55(b). Rule 55(b) empowers courts to conduct hearings to determine the amount of damages, among other things. Fed. R. Civ. P. 55(b)(2)(B).[2] Because

---

[2] The Servicemembers Civil Relief Act affects a plaintiff's entitlement to default judgment, requiring a non-military affidavit. *See* 50 U.S.C. app. §§ 501–597b; Fed. R. Civ. P. 55 Advisory Committee's Note, 1946 Supplementary Note. Ms. Stewart has provided no evidence regarding Mr. Lubell's non-military status. However, if a defaulting defendant does not actually serve in the military, failure to file an affidavit does not require the court to set aside the default

Ms. Stewart proceeds pro se, the Court construes her pleadings liberally. *See Ledbetter v. City of Topeka*, 318 F.3d 1183, 1187 (10th Cir. 2003) (citation omitted).

"Once the default is established, defendant has no further standing to contest the factual allegations of plaintiff's claim for relief." 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2688 (3d ed. 1998); *see also Olcott v. Del. Flood Co.*, 327 F.3d 1115, 1125 (10th Cir. 2003) (noting default judgment precludes merits-based challenge). The Court takes as true all well-pleaded facts, exclusive of allegations related to the amount of damages. *Patray v. Nw. Pub., Inc.*, 931 F. Supp. 865, 869 (S.D. Ga. 1996) (citation omitted); *DeMarsh v. Tornado Innovations, L.P.*, No. 08-2588-JWL, 2009 WL 3720180, at *2 (D. Kan. Nov. 4, 2009). "Consequently, before granting a default judgment, the Court must first ascertain whether 'the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law.'" *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 536 (D. N.J. 2008) (citation omitted); *see also Brack v. Jamison*, No. 05-CV-02658-WYD-CBS, 2007 WL 2914152, at *3 (D. Colo. Oct. 4, 2007) (citations omitted). "[A] party is not entitled to a default judgment as of right; rather the entry of a default judgment is entrusted to the 'sound judicial discretion' of the court." *Cablevision of Southern Connecticut, Limited Partnership v. Smith*, 141 F. Supp. 2d 277, 281 (D. Conn. 2001) (citation omitted); *see also Brack*, 2007 WL 2914152, at *2.

---

judgment. *See* 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2691, at n.14 (3d ed. 1998) (citing *Howie Min. Co. v. McGary*, 256 F. 38 (N.D. W. Va. 1919)); *see also United States v. Hampshire*, 892 F. Supp. 1327, 1332 (D. Kan. 1995) *aff'd,* 95 F.3d 999 (10th Cir. 1996) ("A judgment rendered in violation of the Act is merely voidable, rather than void, and does not violate due process." (citations omitted)). Accordingly, the Court proceeds in an effort to bring to a close this now seven-year-old case. The Court also notes the introduction of evidence that Mr. Lubell is deceased. If indeed Mr. Lubell is deceased as the evidence suggests, then Mr. Lubell is not serving in the military.

## III. Recommended Findings of Fact and Conclusions of Law

### A. Facts

The Court accepts as true the following allegations in Ms. Stewart's Amended Complaint (Am. Compl., ECF No. 2):

Ms. Stewart, a science fiction screenwriter, sent screen treatments and other creative materials to film production companies and film producers and writers in the 1980s. Ms. Stewart owns the registered copyright for these works under the name "The Third Eye" or "Third Eye." In 2003, Ms. Stewart, acting pro se, sued a number of film studios and producers ("the California defendants") alleging the films in the TERMINATOR and MATRIX trilogies infringed her copyrighted works. *Stewart v. Wachowski*, No. CV 03-2873 MMM (VBKx) (C.D. Cal. 2003). That case ("the California action") asserted claims for copyright infringement and declaratory relief in addition to claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO Act").

Sometime around July 2004, Jonathan Lubell contacted Ms. Stewart at her home in Utah to offer his services as an attorney with respect to the California action. Mr. Lubell spoke with Ms. Stewart over the phone from her home in Utah and sent a written fee agreement to Ms. Stewart's home in Utah, where she executed the agreement and paid a retainer fee. Mr. Lubell held himself out as an expert and stated he would assemble a competent legal team to assist with the case—representations upon which Ms. Stewart relied. Gary Brown and Dean Webb thereafter joined Ms. Stewart's California-action legal team. Mr. Lubell, Gary Brown, and Dean Webb drafted Ms. Stewart's first amended complaint in that action. Dean Webb withdrew as Ms. Stewart's counsel in January 2005, and Michael Stoller joined Ms. Stewart's legal team three months later.

In early 2005, the California defendants served requests for discovery and noticed Ms. Stewart for deposition. Although Ms. Stewart could have attended her deposition as scheduled, her attorneys told opposing counsel Ms. Stewart could not attend and unilaterally continued her deposition. Ms. Stewart's attorneys and opposing counsel attempted to reschedule the deposition, ultimately settling on March 17, 2005. Ms. Stewart did not appear for this deposition, ultimately twice failing to appear for her deposition; and both times unknowingly, as her attorneys never advised her of the depositions. During this time, Ms. Stewart's attorneys also failed timely to respond to the outstanding discovery requests, which included requests for admission. As a result of Ms. Stewart's failure to appear at her deposition, the California defendants filed a motion to preclude her testimony, which the court granted.

Finally, on March 25, 2005, Ms. Stewart's attorneys filed a motion to extend the fact discovery deadline on the basis that Mr. Brown had recently suffered a heart attack, and Mr. Stoller had only just recently joined Ms. Stewart's legal team. The court denied Ms. Stewart's motion, and the California defendants soon thereafter filed a motion for summary judgment. Ms. Stewart's attorneys failed to file a timely opposition to the summary judgment motion. Although the California court found at least one of the California defendants had access to Ms. Stewart's protected works, the court granted summary judgment on the basis of Ms. Stewart's failure to respond to the requests for admission, deeming as admitted facts fatal to Ms. Stewart's case. Ms. Stewart's attorneys also failed to depose any witnesses or present any admissible evidence in support of her claims.

The California court found many failings on the part of Ms. Stewart and her attorneys, including: failing to prosecute the matter diligently, failing to respond to discovery, and failing generally to follow the Federal Rules of Civil Procedure. Finally, the California court dismissed

Ms. Stewart's case in June 2005, ordering Ms. Stewart to pay the California defendants' attorneys' fees and costs.

### B. Liability

Accepting the well-pleaded factual allegations of Ms. Stewart's Amended Complaint as true, the Court must still determine whether these unchallenged factual allegations constitute legitimate causes of action. *Chanel*, 558 F. Supp. 2d at 536; *Brack*, 2007 WL 2914152, at *3. Because this Court exercises diversity jurisdiction over the matter, it applies the substantive law of Utah and federal procedural law. *Brown v. Sears, Roebuck & Co.*, 328 F.3d 1274, 1278 (10th Cir. 2003).

At the June 24, 2014 hearing, Ms. Stewart offered evidence of Mr. Lubell's death. (Ex. 24, ECF No. 282.) Whether a cause of action survives or abates upon the defendant's death constitutes a substantive law question on which Utah law controls. *See* 7C Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1952 (3d ed. 1998). As a matter of procedure governed by federal law, Ms. Stewart's reference to Mr. Lubell's death—which does not qualify as a formal suggestion of death made on the record—did not trigger the ninety-day time period for substitution. *Id.* § 1955 at n.9.

#### i. Malpractice Claims

An attorney malpractice claim may take different forms, including breach of contract, breach of fiduciary duty, or negligence. *Christensen & Jensen, P.C. v. Barrett & Daines*, 2008 UT 64, ¶ 21, 194 P.3d 931, 937 (citation omitted). Ms. Stewart brings all three, and all three claims survive Mr. Lubell's death. *See Estate of Berkemier v. Hartford Ins. Co.*, 2003 UT App 78, ¶ 13, 67 P.3d 1012 (noting claims based in contract survive death under Utah common law); W.J. Dunn, Annotation, *Abatement or Survival of Action for Attorney's Malpractice or*

-6-

*Negligence Upon Death of Either Party*, 65 A.L.R.2d 1211 § 2[a] (1959) ("It has generally been held that a cause of action for malpractice or negligence on the part of an attorney survives his death . . .").

### *Breach of Contract*

In *Christensen*, the Utah Supreme Court set out the elements of each variety of malpractice claim. In malpractice actions framed as breach of contract, "[r]ules of contract, not rules of legal malpractice, govern." *Id.* at ¶ 24, 194 P.3d at 938. Such claims require: "(1) a valid and enforceable contract; (2) performance by the plaintiff; (3) breach of the express promise by the defendant; and (4) damages to the plaintiff resulting from the breach." *Id.* (quoting *Bennett v. Jones, Waldo, Holbrook & McDonough*, 2003 UT 9, ¶32, 70 P.3d 17, 26).

Ms. Stewart executed a legal services contract ("the Contract") with Mr. Lubell in September 2004. (Ex. 31, ECF No. 282.) Under the Contract, Mr. Lubell and the other Defendants in this action agreed to provide Ms. Stewart with legal services for the California action. Ms. Stewart paid Mr. Lubell and the other Defendant attorneys $50,000.00. (Am. Compl. ¶ 231, ECF No. 2.) Mr. Lubell, however, failed to provide legal services to Ms. Stewart in the California case, and thereby breached the Contract. For example, Mr. Lubell failed timely to respond to discovery requests or serve discovery requests on the California defendants, (Am. Compl. ¶¶ 85–86, 99, 101, 111, 116–17, 120, 134, 136), failed to depose key witnesses or develop admissible evidence, (*id.* at ¶¶ 160–61), failed to deny requests for admission, (*id.* at ¶¶ 153–54), and failed to respond timely to the California defendants' motion for summary judgment, (*id.* at ¶¶ 142–47).

As a result of Mr. Lubell's breach of contract, Ms. Stewart suffered damages in the amount of the $50,000.00 payment she made to her attorneys, and $305,235.62 for the California

defendants' attorneys' fees award, *Stewart v. Wachowski*, No. 2:03-cv-02873-MMM-VBK, ECF No. 152 at 6 (C.D. Cal July 19, 2006), and costs of $695 ordered by the California court, *id.*, ECF No. 143. An order of the California court found Ms. Stewart's maintenance of that case objectively unreasonable and thus awarded attorneys' fees against Ms. Stewart. *Id.*, ECF No. 150 at 6–7. This finding resulted largely from Ms. Stewart's admissions during discovery. *See id.* at 4–6.

### *Negligence & Breach of Fiduciary Duty*

A malpractice claim based on negligence requires: "(i) an attorney-client relationship; (ii) a duty of the attorney to the client arising from their relationship; (iii) a breach of that duty; (iv) a causal connection between the breach of duty and the resulting injury to the client; and (v) actual damages." *Christensen*, 2008 UT 64, ¶ 22, 194 P.3d at 938 (citations omitted). Similarly, a malpractice claim based on breach of fiduciary duty requires: "(1) an attorney-client relationship; (2) breach of the attorney's fiduciary duty to the client; (3) causation, both actual and proximate; and (4) damages suffered by the client." *Id.* at ¶ 23, 94 P.3d at 938 (citations omitted). "[T]he elements required to prove both theories of legal malpractice are substantially the same." *Id.*

The Contract created an attorney-client relationship between Ms. Stewart and the Defendants, including Mr. Lubell. "As fiduciaries, attorneys have a legal duty 'to represent the client with undivided loyalty, to preserve the client's confidences, and to disclose any material matters bearing upon the representation [of the client].'" *Kilpatrick v. Wiley, Rein & Fielding*, 909 P.2d 1283, 1290 (Utah Ct. App. 1996) (quoting 1 Ronald E. Mallen & Jeffrey M. Smith, *Legal Malpractice* § 11.1, at 631 (3d ed. 1989)).

-8-

Mr. Lubell breached his fiduciary duty to Ms. Stewart. Despite an attorney's fiduciary duty "to disclose any material matters bearing upon the representation,'" *Kilpatrick*, 909 P.2d at 1290, Mr. Lubell did not notify Ms. Stewart of her deposition, resulting in her non-appearance. (*Id.* at ¶¶ 96, 98, 106, 126, 127.) Nor did Mr. Lubell disclose to Ms. Stewart the problems with her case in 2004 and 2005, namely, that her attorneys failed to participate in discovery. (*Id.* at ¶¶ 182–84.)

Mr. Lubell also breached the standard of care he owed to Ms. Stewart as her attorney. "Once an attorney-client relationship is established, the attorney's duty is to '"use such skill, prudence, and diligence as lawyers of ordinary skill and capacity commonly possess and exercise in the performance of tasks which they undertake."'" *Harline v. Barker*, 854 P.2d 595, 598 (Utah Ct. App. 1993) (quoting *Williams v. Barber*, 765 P.2d 887, 889 (Utah 1988)). This duty of care at least required Mr. Lubell to meet or timely seek extension of relevant case-management and response deadlines. As noted above, Mr. Lubell failed timely to respond to discovery, to respond to the California defendants' motion for summary judgment, and to serve discovery on Ms. Stewart's behalf. (*Id.* at ¶¶ 85–86, 99, 101, 111, 116–18, 120, 134, 136, 142–47.) The California court recounts many of Defendants' discovery failures in its June 14, 2005 order granting the California defendants' motion to preclude Ms. Stewart's testimony. *See Stewart v. Wachowski*, No. CV 03-02873 MMM (VBKx), 2005 WL 6186374, at *2–3 (C.D. Cal. June 14, 2005).

Regardless of the form a malpractice action takes—breach of contract, breach of fiduciary duty, or negligence—the same standard of causation applies. *Christensen*, 2008 UT 64, at ¶ 25, 194 P.3d at 938. "Under each theory, the client is required to show that absent the conduct complained of—whether it is a breach of an express promise or fiduciary duty by the

attorney or non-adherence to proper professional conduct—the client would have benefitted."
*Id.* "Where a default judgment is entered against a defendant in a legal malpractice action, both the issues of the lawyer's negligence and the merits of the underlying claim are settled in favor of the plaintiff." *Williams v. Barber*, 765 P.2d 887, 889 (Utah 1988). Thus, all that remains for the Court to determine is the amount of damages that Mr. Lubell owes Ms. Stewart.[3]

### ii. Other Claims

In addition to the malpractice claims, Ms. Stewart brings claims for breach of the covenant of good faith and fair dealing, conversion, fraud, and civil conspiracy. Ms. Stewart cannot recover on a separate claim for breach of the covenant of good faith and fair dealing, because her breach of contract claim redresses the conduct complained of in both claims, and she fails to plead a separate implied promise; thus, the good faith and fair dealing claim duplicates the breach of contract claim. *See Canopy Corp. v. Symantec Corp.*, 395 F. Supp. 2d 1103, 1111 (D. Utah 2005) (applying Utah law and noting that to state separate claims for breach of contract and breach of the implied covenant of good faith and fair dealing plaintiff must "demonstrate some implied promise" apart from contract terms). Ms. Stewart's conversion claim likewise duplicates her breach of contract claim.

Ms. Stewart's fraud claim relies upon the same facts and damages as her malpractice claim and is therefore redundant. *See* 1 Ronald E. Madden, Jeffrey M. Smith, & Allison D. Rhodes, *Legal Malpractice* § 8:1 (2014 ed.) ("Because alternative theories often are based on the same factual allegations as a negligence cause of action, such claims frequently are treated as redundant and are disregarded."); *Carl v. Cohen*, 868 N.Y.S. 2d 7, 7–8 (N.Y. App. Div. 2008) (holding that "fraud claim was duplicative of the legal malpractice"). Ms. Stewart's civil

---

[3] The Court limits its analysis to those underlying claims upon which Ms. Stewart bases her claim to damages on default: copyright infringement.

conspiracy claim is likewise redundant. In any event, Ms. Stewart presents no separate evidence of damages stemming from these claims. Instead, she bases all of her damages from these claims on the lost profits she stood to gain from the California copyright action. Utah law does not permit "double recovery for the same loss." *Brigham City Sand & Gravel v. Mach. Ctr., Inc.*, 613 P.2d 510, 511 (Utah 1980); *Cook Assocs., Inc. v. Warnick*, 664 P.2d 1161, 1168 (Utah 1983). Therefore, the Court RECOMMENDS the District Court dismiss Ms. Stewart's second, fourth, fifth, and seventh causes of action.

### C. Damages

On June 25, 2014, the Court held a hearing on damages under Federal Rule of Civil Procedure 55(b)(2)(B). (*See* ECF No. 279.) At the hearing, and in a subsequent filing, (ECF No. 281 at 1), Ms. Stewart asked this Court for an award of fifteen billion dollars in damages on her claims.

The Court finds Ms. Stewart's malpractice claims—breach of contract, breach of fiduciary duty, and negligence—entitle to her damages stemming from the money she paid under the Contract, the attorneys' fees and costs awarded against her in the California action, and lost damages, if any, based on the underlying California copyright case. Ms. Stewart must still prove the damages which she claims and establish their reasonableness under the circumstances. *See Everyday Learning Corp. v. Larson*, 242 F.3d 815, 818 (8th Cir. 2001); *see also OTO Software, Inc. v. Highwall Techs., LLC*, No. 08-cv-01897-PAB-CBS, 2011 WL 3236049, at *5 (D. Colo. July 5, 2011). However, "[w]hile a plaintiff cannot recover damages that are speculative, an injured party is not required to prove damages with absolute certainty." *OTO Software*, 2011 WL 3236049, at *5 (citations omitted); *Atkin Wright & Miles v. Mountain States Tel. & Tel. Co.*, 709 P.2d 330, 336 (Utah 1985) (noting plaintiff must present "evidence that rises above

-11-

speculation and provides a reasonable, even though not necessarily precise, estimate of damages" (citations omitted)). The court enjoys "considerable latitude in determining the amount of the damages." *OTO Software*, 2011 WL 3236049, at *4.

### i. Payments under the Contract

Prior to the June 25, 2014 Hearing, Ms. Stewart submitted a number of exhibits to the Court. Exhibit 31 consists of the Contract Ms. Stewart executed with Mr. Lubell for legal services related to the California case. (Ex. 31, ECF No. 282.) The Contract required Ms. Stewart to pay Mr. Lubell $5,000.00 upon execution of the contract to be applied to his hourly billing, with the total amount payable by Ms. Stewart for all hourly billing of all attorneys not to exceed $50,000.00. At the hearing Ms. Stewart said she borrowed $50,000.00 to pay her attorneys, although she may have used some of that amount for her own travel, interviews, and appearances. Regarding Mr. Lubell specifically, Ms. Stewart testified that she paid him $10,000.00.

The Court asked Ms. Stewart what documentation she possesses regarding any payments to Mr. Lubell. Ms. Stewart replied she had already submitted some documentation and would mail additional documentation by June 27, 2014. Although Ms. Stewart filed some of the additional documents the Court requested—pages missing from some of the exhibits submitted ahead of the hearing—as of the date of this Report and Recommendation's entry, (*see* ECF No. 281), the Court has received no additional documentation of Ms. Stewart's payments to Mr. Lubell. The Contract provides the only documentary evidence Ms. Stewart submitted regarding such payment. Given the minimal evidence before the Court, and Ms. Stewart's testimony, the Court RECOMMENDS the District Court award Ms. Stewart $10,000.00 in damages from Mr. Lubell on this basis.

### ii. The California Attorneys' Fees Award

The California copyright case underlying this action resulted in an award of attorneys' fees and costs against Ms. Stewart in the amounts of $305,235.62 and $695.00. *Stewart v. Wachowski*, No. 2:03-cv-02873-MMM-VBK, ECF No. 152 (C.D. Cal July 19, 2006). Ms. Stewart referred to costs awarded against her in the California case in the amount of $305,000.00. Ms. Stewart also said the California defendants have filed liens against her in Utah, Nevada, and California. The Court understands her to refer to the awards noted in the above orders from the California court and takes judicial notice thereof. *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (noting federal courts "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue" (citations omitted)). The Court thus RECOMMENDS the District Court award Ms. Stewart damages in the amount of $305,930.62.

In awarding the California defendants their attorneys' fees the court found Ms. Stewart "'acquiesced and was complicit in [her attorneys'] conduct by failing to monitor the progress of the case, despite [the fact that she was in possession] of specific information regarding her attorneys' failure to attend to the litigation.'" *Wachowski*, No. 2:03-cv-02873-MMM-VBK, ECF No. 150 at n.23 (alterations in original). While the California Court made this finding, the facts established by the Amended Complaint in this case do not show culpability by Ms. Stewart. Therefore, the Court does not recommend reducing Ms. Stewart's damages.

### iii. The Underlying California Case

Ms. Stewart seeks approximately $15 billion in damages in this case stemming from her attorneys' failures in the California copyright case. (ECF No. 281 at 1.) Ms. Stewart submitted

documents, (Ex. 19, ECF No. 282), and presented expert witness testimony to support this award. One of these documents consists of a response from a Time Warner Entertainment Company lawyer to a Patent and Trademark Office Action. (Ex. 19 at 1–7, ECF No. 282.) This letter states that the film THE MATRIX took in "more than $475 million in box office worldwide" and "grossed $171 million in the United States alone." (Ex. 19 at 4, ECF No. 282.) The exhibit also includes IMDb[4] printouts with gross profit figures and budget estimates for various TERMINATOR movies. (Ex. 19 at 8–15, ECF No. 282.) Lastly, Ms. Stewart includes a message from an unattributed e-mail address stating sales figures for various MATRIX movies and spinoffs, estimating a "[t]otal of OVER 2.3 BILLION." (Ex. 19 at 16, ECF No. 282.)

Ms. Stewart also elicited testimony from witnesses Art Teshima (a friend and CPA), Catherine "Katy" Riney (a friend and licensed financial representative), and Jeffrey Castolene (an investment professional), in addition to her own testimony. (*See* ECF No. 279.) Mr. Teshima and Ms. Riney testified that the movies at issue in the underlying California copyright case enjoyed profits of approximately $4.9 billion, and Mr. Castolene discussed in general terms the potential interest revenue of the damages Ms. Stewart seeks.

Along with Ms. Stewart herself, Mr. Teshima provided the bulk of Ms. Stewart's testimony regarding damages. Mr. Teshima stated he relied on Nash—a financial reporting service based in El Segundo, California—and IMDb, along with Box Office Mojo and The Numbers—internet resources like IMDb—in reaching the $4.9 billion gross profit figure. Ms. Stewart did not submit any documentation from Nash, which Mr. Teshima identified as the most trusted source and the one upon which he relied the most in reaching his gross profit figure. Ms.

---

[4] IMDb—an abbreviation of Internet Movie Database—is a web site maintaining an Internet-based database of information related to films and television programs, including actor credits, plot summaries, etc.

Teshima stated he did not calculate the net profits for the MATRIX and TERMINATOR movie franchises underlying the California copyright case but that the studios reported to Nash a loss of $.5 billion.

The Court finds Ms. Stewart may not recover damages on this basis. Ms. Stewart presumably seeks profits based on 17 U.S.C. § 504(b), which sets forth remedies for copyright infringement:

> **(b) Actual Damages and Profits.**--The copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages. In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work.

Thus, even assuming the merits of the underlying claim, *see Williams*, 765 P.2d at 889, the California defendants would have been able to establish deductible expenses and the profit not attributable to Ms. Stewart's protected works. Without question, the California defendants incurred deductible expenses in making the TERMINATOR and MATRIX movies. The gross revenue numbers Ms. Stewart provides therefore do not constitute a proper measure of damages in this case as she would not have recovered that much even if her lawyers had not committed malpractice. *See Currin v. Blake Law Firm, LLC*, No. CV105035226S, 2013 WL 3306436, at *2 (Conn. Super. Ct. June 5, 2013) (finding gross profits an improper measure of damages in default in malpractice case involving an underlying copyright action); *see also Atkin Wright & Miles*, 709 P.2d at 336 (noting damages must be based on reasonable approximations and that "[p]roof of loss of gross income only is an insufficient foundation for proof of amount of damages." (citing *Garcia v. Mountain States Telephone & Telegraph Co.,* 315 F.2d 166, 169 (10th Cir. 1963))). Moreover, the testimony of Mr. Teshima reflects a reported net loss of $.5 billion,

foreclosing recovery on this basis. Mr. Teshima questioned the accuracy of this number but offered no other estimate in its place. The Court therefore RECOMMENDS the District Court award Ms. Stewart nothing given the evidence in the record tends to show both movie franchises lost money.

### iv. Punitive Damages

Ms. Stewart requests punitive damages on her breach of contract claim. (Am. Compl. ¶ 200, ECF No. 2.) Utah law generally does not allow punitive damages for a breach of contract. *Jorgensen v. John Clay & Co.*, 660 P.2d 229, 232 (Utah 1983) (citations omitted). An exception to the general rule exists "where the breach of contract amounts to an independent tort." *Id.* (citations omitted). As detailed above, Mr. Lubell's breach of contract did amount to an independent tort—attorney malpractice based in negligence and breach of fiduciary duty. *See Norman v. Arnold*, 2002 UT 81, ¶ 35, 57 P.3d 997, 1006 (recognizing breach of fiduciary duty as a tort upon which the trier of fact may award punitive damages).

> The Utah Supreme Court has stated that
>
> punitive damages are only appropriate in exceptional cases and are not meant to enhance the compensatory damage award. Rather, punitive damages must serve the interests of society by punishing and deterring outrageous and malicious conduct which is not likely to be deterred by other means. Punitive damages, among other things, punish conduct which manifests a knowing or reckless indifference toward, and disregard of, the rights of others.

*Synergetics v. Marathon Ranching Co., Ltd.*, 701 P.2d 1106, 1112–13 (Utah 1985) (citation omitted). This case does not present such an exceptional situation. The undersigned does not believe this case involves the type of outrageous, malicious, knowing, or reckless conduct punitive damages deter and punish. Nor does this case present conduct "not likely to be deterred by other means." *Id.* The Court therefore RECOMMENDS the District Court not award Ms. Stewart any punitive damages.

### v. Prejudgment Interest, Attorneys' Fees, and Costs

"Prejudgment interest may be awarded in a case where the loss is fixed as of a particular time and the amount of the loss can be calculated with mathematical accuracy." *Jorgensen*, 660 P.2d at 233 (citations omitted). As detailed above, damages in this case are not fixed. The Court notes Mr. Castolene's testimony about how much money Ms. Stewart could have earned on the money she should have received from her copyright amounts to a request for prejudgment interest. Either because the Court recommends awarding no monetary damages on the copyright itself for lack of evidence or because prejudgment interest does not apply in cases without a fixed damage amount, the Court RECOMMENDS the District Court deny Ms. Stewart's request for prejudgment interest.

Ms. Stewart had counsel at various times in this case but now proceeds pro se. Although her Amended Complaint requests costs and attorneys' fees, (Am. Compl. ¶ 3 at 38, ECF No. 2), she presented no evidence of either. The Court takes judicial notice of the filing fee of $350.00 Ms. Stewart paid, (ECF No. 1), and RECOMMENDS the District Court award Ms. Stewart $350.00 in costs and deny her request for attorneys' fees.

### RECOMMENDATION

For the reasons set forth above, the undersigned Magistrate Judge RECOMMENDS the District Court enter a FURTHER ORDER on Plaintiff's Motion for Default Judgment (ECF No. 200) and enter judgment against Mr. Lubell as to claims one (breach of contract), three (malpractice), and six (breach of fiduciary duty), and enter damages in favor of Ms. Stewart in the amount of $315,930.62 plus costs in this case of $350.00 for a total of $316,280.62.

Ms. Stewart filed a Motion/Order Requesting Specific Evidence For Damages And Demand For Expedited Award in which she submits pages missing from some of her earlier-

submitted evidence and again requests a damages award of fifteen billion dollars. (ECF No. 281.) The undersigned RECOMMENDS the District Court dispose of that Motion consistent with this Report and Recommendation.

The Court will send copies of this Report and Recommendation to all parties, who are hereby notified of their right to object. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The parties must file any objection to this Report and Recommendation within fourteen (14) days of service thereof. *Id.* Failure to object may constitute waiver of objections upon subsequent review.

DATED this 8th day of August, 2014.

BY THE COURT:

_____
EVELYN J. FURSE
United States Magistrate Judge